UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV JGB 17-01569 (KKx)** | Date | October 12, 2017 |
| Title | *Manuel Villa v. Majestic Terminal Services Inc. et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    Order (1) GRANTING Plaintiff Manuel Villa's Motion to Remand (Dkt. No. 10); and (2) VACATING the October 16, 2017 Scheduling Conference (Dkt. No. 14)

## I.    INTRODUCTION

On June 26, 2017, Plaintiff Manuel Villa ("Plaintiff") began this action against Defendant Majestic Terminal Services Inc. and DOES 1 through 10 (collectively "Defendants") in the California Superior Court for the County of San Bernardino. Plaintiff alleged that he had been racially discriminated against while employed by Defendants. ("Khan Declaration," Dkt. No. 10-1, Declaration of Brennan S. Khan in Support of Motion to Remand, Exh. A.) Plaintiff sought damages in the form of lost wages, emotional distress, punitive, and attorneys' fees. (Id. at 16.) On August 4, 2017, Defendants removed the case on the basis of diversity jurisdiction under 28 U.S.C. § 1441. (Dkt. No. 1.)

On September 1, 2017, Plaintiff filed this motion to remand the action to state court under 28 U.S.C. §§ 1332(a) and 1447(c), arguing that the amount in controversy required for federal jurisdiction has not been met. ("Motion," Dkt. No. 10, at 2.) Defendants opposed Plaintiff's Motion on September 11, 2017 ("Opposition," Dkt. No. 11), and Plaintiff filed his reply on September 18, 2017. ("Reply," Dkt. No. 13.)

## II.    LEGAL STANDARD

Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, federal courts

only have original jurisdiction over civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332.

Moreover, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also Jackson v. Specialized Loan Servicing, LLC, No. CV 14-05981 MMM PLAX, 2014 WL 5514142, at *6 (C.D. Cal. Oct. 31, 2014) (quoting Gaus).  "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson, 2014 WL 5514142, at *6.  The court must resolve doubts regarding removability in favor of remanding the case to state court.  Id.

The district court should first consider whether it is "facially apparent" from the complaint that the jurisdictional amount has been satisfied.  See Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).  When the complaint does not specify the amount of damages, "the court may examine facts in the complaint and evidence submitted by the parties." Simmons, 209 F. Supp. 2d at 1031.  The jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees and punitive damages. See Conrad Assoc. v. Hartford Accident & Indem. Co., 994 F. Supp. 1196, 1198 (N.D. Cal. 1998).

If an amount in controversy is not stated in the complaint, the defendant bears the burden to establish the amount in controversy at removal. Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013).  A removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014).  A defendant's amount in controversy allegation "should be accepted when not contested by the plaintiff or questioned by the court." Id. at 553.  If "defendant's assertion of the amount in controversy is challenged…both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554.  This proof can include affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting Singer, 116 F.3d at 377).  Additionally, the defendant may rely on "reasonable assumptions underlying the defendant's theory of damages exposure." Ibarra, 775 F.3d at 1198.

### III.  DISCUSSION

The parties agree they are citizens of different states, as required by 28 U.S.C. 1332(a).  They dispute only whether Defendants have shown that the amount in controversy exceeds $75,000.  Plaintiff here seeks four types of damages:  lost wages, emotional distress, punitive, and attorney's fees.  The parties dispute how each should be calculated.

A. **Lost Wages**

Plaintiff worked for Defendants from approximately October 2016 through March 31, 2017. (Khan Declaration at ¶ 15.) Plaintiff earned $16.05 per hour (Declaration of Teri Cella, Dkt. 11-2), and worked 24 hours per week (Khan Declaration at ¶ 19). Plaintiff and Defendants dispute when the Court should stop counting lost wages to determine the amount in controversy. Plaintiff argues that the Court should count lost wages up until the present day. (Reply at 5–6). At the time Plaintiff filed his Reply, those lost wages totaled about $8,000. (Id.) Plaintiff did not cite to any cases supporting his theory of calculation. Defendants ask the Court to count up to the date of a hypothetical trial, which they estimate would be held on October 1, 2018. (Opposition at 5.) By this time, assuming a steady hourly wage and work week, Defendants would owe Plaintiff approximately $30,000 in back pay. (Id.) At least one court has found this to be the appropriate method of calculation. See Rodriguez v. Boeing Co., CV 14-04265-RSWL (AGRx) 2014 U.S. Dist. WL 3818108, at *3–4 (C.D. Cal. Aug. 1, 2014).

The Court finds Defendants' method of calculation to be appropriate. See id. at 4, (stating that back pay "is determined from the time of the unlawful adverse action until the date of judgment," not from the time of unlawful action until when the plaintiff filed the complaint). Calculating back pay until the date of judgment is a "reasonable assumption[]" under Ibarra. See Ibarra, 775 F.3d at 1198. Thus, the Court considers $30,000 in lost wages part of the amount in controversy.

B. **Emotional Distress and Punitive Damages**

Plaintiff's complaint alleges emotional distress. (Khan Declaration at ¶ 35.) The Court should consider emotional distress damages when calculating the amount in controversy. See Simmons, 209 F. Supp 2d at 1034. Defendants argue that the emotional distress and punitive damages in controversy, standing alone, surpass the $75,000 jurisdictional threshold. (Opposition at 5.) When the amount the plaintiff seeks is unspecific, the defendant may cite to jury verdicts in analogous cases. See Cain v. Hartford Life & Acc. Ins. Co., 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012); Soto, 2013 U.S. Dist. WL 3071267 at *8–9.

Plaintiff also seeks an unspecified amount in punitive damages. (Khan Declaration at 16.) Punitive damages are a part of the amount in controversy calculation. See Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). To establish punitive damages, the defendant may argue amounts awarded in analogous cases. Surber v. Reliance Nat. Indem. Co., 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).

In their Opposition, Defendants cite eight cases demonstrating that emotional distress damages in employment litigation have ranged from $125,000 to over $2 million. (Opposition at 5–8.) Additionally, Defendants cite to different jury verdicts awarding substantial amounts of punitive damages, ranging from $200,000 to $5 million. (Id.) In his Reply, Plaintiff counters by essentially arguing that Defendants have analogized at too high a level of abstraction. Plaintiff contends that none of the cases cited by Defendants involve a race discrimination case, and none

involve plaintiffs who are part-time, low-wage earners that worked for their employer for less than a year. (Reply at 7–8.) Although Defendants introduce specific facts of various other high jury award cases in the Declaration of Christopher Habashy, (Dkt. No. 11-1), Defendants fail to do the actual work of analogizing those cases to the facts of this case beyond a boiler plate label of "employment litigation." (Opposition at 6.)

Defendants chose the cases they cited to support their position. However, they should have – but did not – present factually analogous authority from which the court could reasonably infer that the amounts awarded in those cases can be reasonably predicted here. As a consequence, the Court is unable to rely on the Defendants' chosen cases to determine the amount in controversy. Furthermore, without any other "summary judgment-type evidence" to bolster their argument, see Ibarra, 775 F.3d at 1197, Defendants have failed to establish that any emotional distress or punitive damages should be considered.

### C. Attorneys' Fees

Plaintiff seeks recovery of attorneys' fees. (Khan Declaration at 16.) Plaintiff and Defendants disagree on the appropriate calculation of those fees. Defendants invite the Court to estimate the length of the total life of the case (200 hours) and how much Plaintiff pays his lawyers ($300 per hour). (Opposition at 8–9.) Doing the math, Defendants argue that Plaintiff could "conservative[ly]" spend $60,000 on attorneys' fees. (Id.)

This Court takes the position that when calculating attorneys' fees to establish jurisdiction, "the only fees that can be considered are those incurred as of the date of removal." See Faulkner v. Astro-Med, Inc., 1999 U.S. Dist. WL 820198, *9 (N.D. Cal. Oct. 4, 1999), citing Miranti v. Lee, 3 F.3d 925, 928 (5th Cir. 1993). See also Conrad, 994 F. Supp. at 1200; Reames v. AB Car Rental Servs., 899 F. Supp. 2d 1012, 1020–21 (D. Or. 2012).

Once again, Defendants have not provided the Court with any evidence to support their argument concerning Plaintiff's attorney's fees. Defendants have instead given only estimations, and these estimations are not based on the appropriate timeline. Without "summary judgement-type evidence" to support their contentions, Defendants have failed to establish any amount of attorneys' fees to be included in the amount in controversy. See Ibarra, 775 F.3d at 1197.

### D. Plaintiff's Unwillingness to Stipulate

Defendants argue that they would have been willing to remand the case if Plaintiff stipulated that he would not seek more than $75,000 in damages. (Opposition at 4–5.) Plaintiff declined to do so. (Khan Declaration, Ex. E.) Defendants seek to use this unwillingness as support for their argument that the amount in controversy exceeds $75,000. (Opposition at 4–5.) Although Defendants cited no authority for this point, at least one other court has accepted this argument. In Echelbarger v. Brookdale Living Communities of WA-PP, LLC, CV-10-401-RHW 2010 U.S. Dist. WL 5018590, at *2 (E.D. Wash. Dec. 2 2010), the court in dictum stated that

plaintiff's refusal to stipulate made it more likely than not that the amount in controversy requirement had been met.

Courts disagree, however, on how to treat a plaintiff's unwillingness to stipulate. In Conrad, 994 F. Supp. at 1199, the district court found that the plaintiff's refusal to stipulate did not establish that the case met the jurisdictional minimum. The court stated that "defects in subject matter jurisdiction cannot be stipulated to or waived." Id. This Court agrees with Conrad and its progeny; a plaintiff's refusal to stipulate does not establish that it is more likely than not that the jurisdictional bar has been met. See also Pereira v. Gate Gourmet, Inc., 08-07469 MMM (PJWx) 2009 U.S. Dist. WL 1212802, at *2, n.25 (C.D. Cal. Apr. 30, 2009); Sasso, 2015 U.S. Dist. WL 898468, at *8; Janakes v. U.S. Postal Serv., 768 F.2d 1091, 1095 (9th Cir. 1985) (stating that "parties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction.")

## IV. CONCLUSION

Defendants have failed to establish that the amount in controversy more likely than not exceeds the jurisdictional minimum. Thus, the Court lacks subject matter jurisdiction over Plaintiff's claims. The Court GRANTS Plaintiff's Motion, REMANDS the matter to the San Bernardino County Superior Court, and VACATES the Scheduling Conference slated for October 16, 2017.

**IT IS SO ORDERED.**